UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAUDE DURAND,<br><br>   Plaintiff,<br><br> v.<br><br>COLUMBIA CARE INC., MICHAEL ABBOTT, NICHOLAS VITA, JEFF CLARKE, JULIE HILL, JAMES A.C. KENNEDY, JONATHAN P. MAY, FRANK SAVAGE, ALISON WORTHINGTON, and PHILLIP GOLDBERG,<br><br>   Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 23, 2022 (the "Proposed Transaction"), pursuant to which Columbia Care Inc. ("Columbia" or the "Company") will be acquired by Cresco Labs Inc. ("Cresco").

2. On March 23, 2022, Columbia's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an arrangement agreement (the "Agreement") with Cresco. Pursuant to the terms of the Agreement, Columbia's stockholders will receive 0.5579 subordinate voting shares of Cresco for each share of Columbia common stock they own.

3. On May 2, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the

Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Columbia common stock.

9. Defendant Columbia is a British Columbia corporation and a party to the Agreement. Columbia's common stock is traded on the OTC under the ticker symbol "CCHWF."

10. Defendant Michael Abbott is Co-Founder and Chairman of the Board of the Company.

11. Defendant Nicholas Vita is Co-Founder, Chief Executive Officer, and director of the Company.

12. Defendant Jeff Clarke is a director of the Company.

13. Defendant Julie Hill is a director of the Company.

14. Defendant James A.C. Kennedy is a director of the Company.

15. Defendant Jonathan P. May is a director of the Company.

16. Defendant Frank Savage is a director of the Company.

17. Defendant Alison Worthington is a director of the Company.

18. Defendant Philip Goldberg is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

20. Columbia is one of the largest and most experienced cultivators, manufacturers and providers of cannabis products and related services, with licenses in 18 U.S. jurisdictions and the EU.

21. The Company operates 131 facilities including 99 dispensaries and 32 cultivation and manufacturing facilities, including those under development

22. On March 23, 2022, Columbia's Board caused the Company to enter into the Agreement.

23. Pursuant to the terms of the Agreement, Columbia's stockholders will receive 0.5579 subordinate voting shares of Cresco per share.

24. According to the press release announcing the Proposed Transaction:

3

Cresco Labs (CSE:CL) (OTCQX:CRLBF) ("Cresco Labs" or the "Company") and Columbia Care Inc. (NEO:CCHW) (CSE:CCHW) (OTCQX:CCHWF) ("Columbia Care") announced today they have entered into a definitive arrangement agreement (the "Arrangement Agreement") pursuant to which Cresco Labs will acquire all of the issued and outstanding shares (the "Columbia Care Shares") of Columbia Care (the "Transaction"). Subject to customary closing conditions and nessesary regulatory approvals, the Transaction is expected to close in the fourth quarter of 2022.

Under the terms of the Arrangement Agreement, shareholders of Columbia Care (the "Columbia Care Shareholders") will receive 0.5579 of a subordinate voting share of Cresco Labs (each whole share, a "Cresco Labs Share") for each Columbia Care common share (or equivalent) held, subject to adjustment (the "Consideration") representing total consideration enterprise value of approximately US$2.0 billion based on the closing price of Cresco Labs Shares on the Canadian Securities Exchange (the "CSE") as of March 22, 2022. The Transaction provides Columbia Care Shareholders with premiums per Columbia Care Share of approximately 16% based on the closing prices of the Columbia Care Shares and the Cresco Labs Shares, and (ii) 19%, based on the 20-day volume weighted average prices ("VWAP") of the Columbia Care Shares and the Cresco Labs Shares, each on the CSE as of March 22, 2022.

After giving effect to the Transaction, Columbia Care Shareholders will hold approximately 35% of the pro forma Cresco Labs Shares (on a fully diluted in-the-money, treasury method basis). . . .

Terms of the Transaction

The Transaction will be effected by way of a plan of arrangement pursuant to the *Business Corporations Act* (British Columbia). Under the terms of the Arrangement Agreement, Cresco Labs will acquire all of the issued and outstanding Columbia Care Shares, with each Columbia Care Shareholder receiving 0.5579 of a Cresco Labs Share for each Columbia Care Share, implying a price per Columbia Care Share of US$3.64, which represents premiums of (i) 16%, based on the closing prices of the Columbia Care Shares and the Cresco Labs Shares, and (ii) 19%, based on the 20-day VWAPs of the Columbia Care Shares and the Cresco Labs Shares, each on the CSE as of March 22, 2022. After giving effect to the Transaction, Columbia Care Shareholders will hold approximately 35% of pro forma Cresco Labs Shares (on a fully diluted in-the-money, treasury method basis). The Consideration is subject to adjustment in the event that Columbia Care is required to issue shares in satisfaction of an earn-out payment for a prior acquisition, with the potential adjustment in proportion to the additional dilution from such potential issuance relative to Columbia Care's current fully diluted in-the-money outstanding shares. Additional details of the Transaction, including any adjustment to the Consideration will be described in the management information circular and proxy statement (the "Circular") that will be mailed to Columbia Care Shareholders in connection with a special meeting of Columbia Care Shareholders

(the "Meeting") expected to be held in the second quarter to approve the Transaction.

The Transaction has been unanimously approved by the Boards of Directors of each of Cresco Labs and Columbia Care. Columbia Care Shareholders holding approximately 25% of the voting power of the issued and outstanding Columbia Care Shares have committed to enter into voting support agreements with Cresco Labs to vote in favor of the Transaction. Certain Columbia Care Shareholders have also agreed to not transfer a significant portion of their resulting Cresco Labs Shares for up to an eight-month period following closing of the Transaction.

The Arrangement Agreement provides for certain customary provisions, including covenants in respect of non-solicitation of alternative transactions, a right to match superior proposals, a US$65 million termination fee payable to Cresco Labs under certain circumstances

The Transaction is subject to, among other things, receipt of the necessary approvals of the Supreme Court of British Columbia, the approval of two-thirds of the votes cast by Columbia Care Shareholders at the Special Meeting, receipt of the required regulatory approvals, including, but not limited, approval pursuant to the Hart–Scott–Rodino Antitrust Improvements Act, and other customary conditions of closing. Approval of Cresco Labs Shareholders is not required. Additional details of the Transaction will be provided in the Circular.

Recommendation of the Columbia Care Board

The Board of Directors of Columbia Care (the "Columbia Care Board") has unanimously determined, after receiving financial and legal advice and following the receipt of a unanimous recommendation of a special committee of independent directors (the "Special Committee"), that the Transaction is in the best interests of Columbia Care, and that, on the basis of the Fairness Opinions (as defined herein), that the Consideration to be received by the Columbia Care Shareholders is fair, from a financial point of view, to the Columbia Care Shareholders.

The Columbia Care Board unanimously recommends that Columbia Care Shareholders vote in favor of the resolution to approve the Transaction. The Columbia Care Board obtained a fairness opinion from Canaccord Genuity Corp. ("Canaccord Genuity") and an independent fairness opinion from ATB Financial Markets Inc., (the "Fairness Opinions"), each which provide that, as at the date of such respective opinion and based upon and subject to the assumptions, procedures, factors, limitations and qualifications set forth therein, the Consideration to be received by the Columbia Care Shareholders pursuant to the Transaction is fair, from a financial point of view, to the Columbia Care Shareholders.

Financial and Legal Advisors

Stoic Advisory Inc. and Solidum Capital Advisors are acting as financial advisor to Cresco Labs. A.G.P./Alliance Global Partners provided a fairness opinion to Cresco

Labs' Board of Directors. Bennett Jones LLP is acting as Canadian legal advisor to Cresco Labs. Paul Hastings LLP is acting as US legal advisor to Cresco Labs.

Canaccord Genuity is acting as financial advisor to Columbia Care and provided a fairness opinion to the Columbia Care Board. Stikeman Elliott LLP is acting as Canadian legal advisor to Columbia Care. Foley Hoag LLP is acting as US legal advisor to Columbia Care.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

25. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Proxy Statement omits material information.

27. First, the Proxy Statement omits the Company's and Cresco's financial projections.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors, ATB Capital Markets Inc. ("ATB") and Canaccord Genuity ("Canaccord").

30. With respect to ATB's Selected Publicly Traded Companies Analyses, the Proxy Statement fails to disclose the individual multiples and metrics for the companies.

31. With respect to ATB's Precedent Transaction Premiums Paid analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

32. With respect to ATB's Precedent Transaction Multiples Paid analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; (ii) the individual multiples and metrics for the transactions; (iii) the announcement and closing dates for the transactions; and

(iv) the total values of the transactions.

33.     With respect to ATB's Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the unlevered free cash flows used in the analyses and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates and multiples used in the analyses; and (iii) the results of the analyses.

34.     With respect to ATB's Has/Gets Analysis, the Proxy Statement fails to disclose the synergies used in the analysis.

35.     With respect to ATB's Equity Research Price Targets analyses, the Proxy Statement fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

36.     With respect to Canaccord's Contribution Analysis, the Proxy Statement fails to disclose the forecast estimates and research analysts estimates used in the analysis.

37.     With respect to Canaccord's Comparable Companies Trading Analyses, the Proxy Statement fails to disclose: (i) the companies observed in the analyses; and (ii) the individual multiples and metrics for the companies.

38.     With respect to Canaccord's Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; (ii) the individual multiples and metrics for the transactions; (iii) the announcement and closing dates for the transactions; and (iv) the total values of the transactions.

39.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Columbia

42. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Columbia is liable as the issuer of these statements.

44. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

45. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

47. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

48. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Columbia within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Columbia and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

54. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: May 18, 2022           **RIGRODSKY LAW, P.A.**

                 By: */s/ Gina M. Serra*
                    Gina M. Serra
                    825 East Gate Boulevard, Suite 300
                    Garden City, NY 11530
                    Telephone: (516) 683-3516
                    Email: gms@rl-legal.com

                    *Attorneys for Plaintiff*